**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MADISON ROSE LUCEY,

Plaintiff,

v.

WIDENER UNIVERSITY COMMONWEALTH
LAW SCHOOL, et al.,

Defendants.

Civil Action No. 3:25-cv-01707-RDM-DFB
(Judge Robert D. Mariani)
(Chief Magistrate Judge Daryl F. Bloom)

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR RECONSIDERATION OF DOC. 133 (DOC. 134), RESPONDING TO DEFENDANTS' OPPOSITION (DOC. 149)**

Madison Rose Lucey, M.S.
Plaintiff Pro Se

**TABLE OF CONTENTS**

INTRODUCTION....................................................................................................6

I. THE GOVERNING AUTHORITIES REQUIRE CONSIDERATION OF IDENTIFIED ERROR, NOT NEW EVIDENCE AS AN INDISPENSABLE CONDITION....................................................................................................7

II. STATUTE-SPECIFIC LIABILITY RULES DO NOT EXTINGUISH DISTINCT CIVIL-RIGHTS CLAIMS BY IMPLICATION....................................8

A. Jewish-ancestry discrimination under § 1981 requires its own analysis.........8

B. Institutional discrimination, federal conspiracy, and constitutional preservation remain distinct....................................................................10

III. RULE 8 AND FUTILITY MUST BE APPLIED TO THE ACTUAL PROPOSED CORRECTIONS....................................................................11

IV. THE ATTORNEY–CLIENT CONSPIRACY RULE DOES NOT SUPPLY BLANKET IMMUNITY FROM ABUSE OF PROCESS......................15

V. THE EXISTING REQUESTS TO CORRECT AND DEFINE THE AMENDMENT CONDITIONS REMAIN UNANSWERED ON THEIR TERMS....................................................................................................17

CONCLUSION AND REQUESTED DISPOSITION............................................19

**TABLE OF AUTHORITIES**

**Cases**

*Al-Khazraji v. Saint Francis College*,

784 F.2d 505 (3d Cir. 1986)....................8

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009)....................14

*Brown v. Philip Morris Inc.*,

250 F.3d 789 (3d Cir. 2001)....................11

*Comcast Corp. v. National Association of African American-Owned Media*,

589 U.S. 327 (2020)....................10

*Connelly v. Lane Construction Corp.*,

809 F.3d 780 (3d Cir. 2016)....................14

*Dietz v. Bouldin*,

579 U.S. 40 (2016)....................18

*Emerson v. Thiel College*,

296 F.3d 184 (3d Cir. 2002)....................8

*Fitzgerald v. Barnstable School Committee*,

555 U.S. 246 (2009)....................8, 10–11

*Foman v. Davis*,

371 U.S. 178 (1962)....................11

*Garrett v. Wexford Health*,

938 F.3d 69 (3d Cir. 2019)....................................................................15

*General Refractories Co. v. Fireman's Fund Insurance Co.*,

337 F.3d 297 (3d Cir. 2003)..........................................................15–16

*Heffernan v. Hunter*,

189 F.3d 405 (3d Cir. 1999)....................................................................15

*In re Pharmacy Benefit Managers Antitrust Litigation*,

582 F.3d 432 (3d Cir. 2009)......................................................................7

*Max's Seafood Café v. Quinteros*,

176 F.3d 669 (3d Cir. 1999)......................................................................8

*Qazizadeh v. Pinnacle Health System*,

214 F. Supp. 3d 292 (M.D. Pa. 2016)........................................................7

*Runyon v. McCrary*,

427 U.S. 160 (1976)...................................................................................9

*Saint Francis College v. Al-Khazraji*,

481 U.S. 604 (1987)...............................................................................8–9

*Shane v. Fauver*,

213 F.3d 113 (3d Cir. 2000)....................................................................11

*State National Insurance Co. v. County of Camden*,

824 F.3d 399 (3d Cir. 2016)......................................................................7

*Todd v. Disability Rights Pennsylvania*,

No. 1:25-cv-01337-MCC, Doc. 14 (M.D. Pa. Sept. 4, 2025) (unpublished)..........12

**Constitution, statutes, and rules**

42 U.S.C. § 1981..........8–10, 12

42 U.S.C. § 1983..........11

42 U.S.C. § 1985(3)..........10

Federal Rule of Civil Procedure 8..........11, 15

Federal Rule of Civil Procedure 11..........12–13, 18

Federal Rule of Civil Procedure 54(b)..........7

Federal Rule of Civil Procedure 55(a)..........18

M.D. Pa. Local Rule 7.8..........13, 21

**INTRODUCTION**

Defendants' opposition does not resolve the distinction on which reconsideration turns: a limitation on liability under one statute is not a disposition of every independently pleaded claim against the same person. Nor does a characterization of an earlier pleading establish that the previously tendered substantive corrections were futile. Doc. 134 identifies those errors and their consequences; Doc. 149 largely repeats the conclusions being challenged. The requested correction concerns the claims and allegations actually presented, including Plaintiff's distinct Jewish-ancestry civil-rights claims—not a substituted, narrower account of this action.

The issue is concrete. Doc. 133 reasons that individual liability is unavailable under the ADA and Title IX, then dismisses claims against fifteen enumerated individuals with prejudice. It characterizes the corrected proposal as simply adding numbered paragraphs, the bottle-related allegations as a solitary display, and counsel's immunity as disposing of the asserted abuse of process. Docs. 134–135 identify materially different proposed allegations and governing standards. This reply answers Doc. 149 on those existing grounds. It neither tenders a new complaint nor concedes the challenged characterizations, abandons a distinct claim, or converts the separate opposition to Doc. 150 into this reconsideration reply.

## I. THE GOVERNING AUTHORITIES REQUIRE CONSIDERATION OF IDENTIFIED ERROR, NOT NEW EVIDENCE AS AN INDISPENSABLE CONDITION.

Doc. 133 expressly leaves an ADA-retaliation claim pending under the Second Amended Complaint. Doc. 133, p. 7, ¶ 8. Reconsideration therefore concerns an interlocutory ruling under Rule 54(b), the vehicle invoked in Doc. 134. *State National Insurance Co. v. County of Camden*, 824 F.3d 399, 406 & n.14 (3d Cir. 2016), recognizes the district court's continuing authority to reconsider interlocutory rulings while it retains jurisdiction. Defendants' own authority, *Qazizadeh v. Pinnacle Health System*, 214 F. Supp. 3d 292, 295–96 (M.D. Pa. 2016), expressly distinguishes that standard from the stricter standard governing reconsideration of completed judgments.

*Qazizadeh* permits interlocutory reconsideration when consistent with justice, while requiring good cause and rejecting mere repetition or belated arguments that could previously have been presented. Plaintiff meets that issue directly: her motion compares the actual existing allegations and proposed corrections with the propositions on which the challenged rulings depend. Doc. 135, pp. 7–10. The asserted ground is a material mismatch, not a demand for another opportunity to express disagreement. The restraint recognized in *In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432, 439 (3d Cir.

2009), does not immunize an identified error or prevent clarification of an ambiguous disposition.

Even under Defendants' formulation, the grounds are disjunctive. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999), faults the failure to consider clear error or manifest injustice after finding no changed law or new evidence. Doc. 149's repeated observation that Plaintiff supplies neither does not answer that independent ground. Plaintiff retains the burden to establish reconsideration; Defendants' silence on a particular comparison is not an admission. But invoking de novo review does not explain why a statute-specific defendant limitation disposes of a different statute, why an allegation of repeated conduct becomes solitary, or why a proposal containing substantive revisions is only renumbering. Those are reviewable propositions, not merely descriptions of Plaintiff's dissatisfaction.

## II. STATUTE-SPECIFIC LIABILITY RULES DO NOT EXTINGUISH DISTINCT CIVIL-RIGHTS CLAIMS BY IMPLICATION.

### A. Jewish-ancestry discrimination under § 1981 requires its own analysis.

Doc. 149, p. 3, relies on *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002), and *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009), to defend the individual-defendant disposition. Those authorities do not eliminate personal liability under 42 U.S.C. § 1981. *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987), recognizes

liability for an individual's intentional participation in interference with protected § 1981 rights. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609–13 (1987), distinguishes ancestry or ethnic-characteristic discrimination from religion standing alone. *Runyon v. McCrary*, 427 U.S. 160, 172–75 (1976), applies § 1981 to private educational contracting.

This distinction is present in the record, not newly invented in reply. The filed Second Amended Complaint pleads § 1981 educational-contract and Jewish-ancestry allegations. Doc. 71, pp. 248–49, Charges 75–76. The proposed corrected pleading separately assigns Count VII to Emily Dreyfus and, only to the extent legally attributable, the responsible Widener entity. Doc. 128-1, pp. 201–05, ¶¶ 238–242. Its roadmap allocates ADA and Title IX theories to institutional defendants while preserving distinct individual theories. *Id.* pp. 17–19, ¶ 34. Respecting one statute's defendant limitation is not an admission that every independently asserted claim against that person fails.

The proposed Count VII identifies tuition-supported educational benefits, Dreyfus's alleged use of an Academic Success Fellow role, and alleged later impairment of school-linked benefits. It expressly addresses the favorable recommendation after ancestry disclosure and subsequent warm interactions; it does not suppress that chronology or treat knowledge followed by blocking as sufficient by itself. Doc. 128-1, ¶¶ 240A–G, 241; Doc. 135, pp. 11–12. *Comcast*

*Corp. v. National Association of African American-Owned Media*, 589 U.S. 327, 341 (2020), requires but-for causation. Plaintiff seeks examination of the actual contractual, personal-participation, and ancestry-causation allegations under that standard. Neither the existence of a § 1981 heading nor a general individual-liability rule under another statute answers that examination. The with-prejudice determination requires reasons directed to this claim.

**B. Institutional discrimination, federal conspiracy, and constitutional preservation remain distinct.**

The proposed Title VI count identifies separate American Indian/Native American leadership-opportunity and Jewish shared-ancestry educational-environment modules against the federal-financial-assistance recipient. The proposed Title IX count asserts institutional sex-discrimination liability, not individual Title IX damages. Doc. 128-1, ¶¶ 243–252; Doc. 135, pp. 13–14. *Fitzgerald*'s individual-defendant limitation does not establish that the institutional Count IX was adjudicated on its own allegations. The reply preserves the notice, attribution, discrimination, and other elements applicable to those institutional theories; it does not substitute individual liability for recipient liability.

The filed federal conspiracy claim also cannot be conflated with the later proposed state-law conspiracy count. Charge 79 expressly invokes 42 U.S.C. § 1985(3) and identifies the Property II episode involving Hemingway and the Registrar. Doc. 71, pp. 255–56. Proposed Count XVII instead invokes

Pennsylvania conspiracy law. Doc. 128-1, ¶¶ 295–304; Doc. 134, p. 2, ¶ 3. The federal claim must be considered under its own elements, including the restrictions on private conspiracies discussed in *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805–06 (3d Cir. 2001), rather than disposed of through an ADA, Title IX, or state-conspiracy rule that does not answer those elements.

Likewise, *Fitzgerald*, 555 U.S. at 258–59, rejects categorical displacement of otherwise available § 1983 equal-protection claims by Title IX. Plaintiff's existing constitutional-preservation argument retains the state-action requirement and does not manufacture a new operative Hemingway § 1983 count. Doc. 135, p. 14. The requested relief remains claim-specific reconsideration or clarification of what was actually decided. It does not assume that naming a constitutional provision cures an absent element, that the proposed complaint is already operative, or that dismissed claims revive without an order.

**III. RULE 8 AND FUTILITY MUST BE APPLIED TO THE ACTUAL PROPOSED CORRECTIONS.**

Doc. 149, p. 4, answers that a roadmap or claim-to-defendant table cannot cure a rambling pleading. That does not address the motion's stated premise: the proposal contains substantive corrections in addition to organization. Doc. 134, ¶ 1; Doc. 135, pp. 9–10. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000), tests futility through the legal sufficiency of the pleading as amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962), recognizes legitimate grounds for denying amendment,

including repeated failure to cure deficiencies. Plaintiff disputes that the actual corrections were assessed; she does not claim an unlimited right to amend or that a table alone establishes sufficiency.

Exhibits A and B supplement the argument made here; they do not replace it. Exhibit A, pp. 1–4 and 6, compares the Court's and Defendants' use of authorities with their actual holdings, without claiming a judicial-bias finding or a Rule 11 violation. Exhibit B, pp. 1–4, reproduces the roadmap in proposed Doc. 128-1, ¶ 34, ECF pp. 17–19: separate § 1981 Count VII against Dreyfus with conditional institutional attribution, institutional Title IX Count IX, and abuse-of-process Count XII against Becker and proposed Lamb McErlane PC, among other allocated theories. The roadmap identifies what was tendered; it does not by itself establish sufficiency. Doc. 133, p. 4, invokes Doc. 122's citation to the unpublished September 4 memorandum in Todd v. Disability Rights Pennsylvania, No. 1:25-cv-01337-MCC, Doc. 14 at 16 (M.D. Pa. Sept. 4, 2025); Widener's counsel expressly cites Todd in Doc. 149, ECF p. 4, at 2025 WL 2550859, *4. That memorandum dismissed Todd's original complaint without prejudice and allowed amendment (Doc. 15); a later order dismissed Todd's amended complaint with prejudice (Doc. 31). Todd does not categorically prohibit a with-prejudice dismissal. Its initial pleading analysis does not decide whether Plaintiff's distinct claims and substantive corrections actually tendered here received claim-specific

consideration. See Ex. A, p. 4; Ex. B, pp. 2–4. The Todd memorandum and orders accompany this reply pursuant to M.D. Pa. Local Rule 7.8(a).

First, the proposed factual account is not a claim based solely on one image or one display. Paragraphs 62–65A describe recurring bottle-related conduct, its alleged context, notice, and responses; paragraphs 36 and 146–148 identify additional actor-specific context. Doc. 135, pp. 12–13. Plaintiff's theory rests on the pleaded sequence and cumulative inference, not on declaring an image intrinsically antisemitic. Treating recurrence and alleged institutional notice as absent changes the factual premise to be evaluated. That distinction also bears on the litigation-misconduct characterization in Doc. 133, p. 6 n.5. Plaintiff seeks correction of the characterization without representing that the footnote itself imposed a formal Rule 11 sanction.

Second, the proposed contractual-interference count does not require treating the March 2026 withdrawal as the only actionable objective or injury. It identifies earlier educational, course, grading, advising, and professional-opportunity transactions and asserts defendant-specific acts and contractual consequences. Doc. 128-1, ¶¶ 288–294; Doc. 135, pp. 15–16. Plaintiff preserves the distinctions already addressed concerning third-party performance, outsider status or action beyond an agency role, causation, and educational-malpractice limitations. The argument is not that an improper motive automatically converts every institutional

agent into an outsider. It is that a withdrawal-only description does not decide the earlier transactions actually tendered.

Third, proposed Count XVII identifies particular actor groupings, transactions, and asserted underlying wrongs in paragraphs 291, 295, and 298–300, while paragraphs 297A–C separately address capacity and agreement requirements. Paragraph 298A supplies the alleged protected-activity and grading sequence. Doc. 128-1, ¶¶ 290–304; Doc. 135, pp. 16–18. An actionable underlying tort, agreement, the applicable malice standard, and legally distinct participants remain necessary. Those requirements must be applied to the identified combinations, not replaced by the size of the caption or a universal-conspiracy characterization that Plaintiff contests.

These are examples of the corrections already tendered, not a new complaint by reply. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), excludes bare legal conclusions; it does not authorize substituting a different factual allegation for the one pleaded. *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 786–87, 789–93 (3d Cir. 2016), requires the pleaded facts and reasonable inferences to be evaluated under the plausibility standard without imposing a prima facie evidentiary burden. The proposed roadmap supplies locations for the factual inquiry; it does not displace that inquiry.

*Garrett v. Wexford Health*, 938 F.3d 69, 92–94 (3d Cir. 2019), makes Rule 8's notice inquiry contextual, including the case's complexity and whether discrete defendants and conduct can be understood. *Garrett* does not authorize unlimited length and recognizes the propriety of dismissal in appropriate cases after refusal to tailor excessive pleadings. Plaintiff invokes its governing inquiry, not an exemption. The authorities cited in Doc. 149, p. 4, supply no categorical rule that an actual substantive correction is ineffective because it is accompanied by a roadmap. The issue remains whether the identified allegations provide notice and meet the governing elements. If the Court concludes that a particular defect remains, the requested alternative is a claim-specific explanation distinguishing that defect from the corrections actually tendered. Doc. 134, p. 6 (Requested Order).

**IV. THE ATTORNEY–CLIENT CONSPIRACY RULE DOES NOT SUPPLY BLANKET IMMUNITY FROM ABUSE OF PROCESS.**

Doc. 149, p. 3, treats *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999), as resolving both counsel's immunity and the asserted abuse of process. *General Refractories Co. v. Fireman's Fund Insurance Co.*, 337 F.3d 297, 305–11, 313–14 (3d Cir. 2003), requires separating those questions. It affirmed dismissal of inadequately pleaded abuse of process but reversed denial of leave to cure; it rejected an overbroad judicial-privilege rationale while separately upholding the

attorney–client conspiracy bar. The latter doctrine cannot silently become universal immunity from the former tort.

*General Refractories* examines the primary misuse of the particular legal procedure; the challenged purpose need not be unrelated to the entire litigation. *Id.* at 305–11. The proposed Count XII identifies the Touchstone subpoena, the alleged sanctions-related retaliatory purpose, breadth and service representations, and alleged pre-quashing injuries. Doc. 128-1, ¶¶ 263–270; Doc. 135, pp. 18–20. It alleges emergency travel and physical burdens, missed instruction, and disruption connected to protecting treatment information. It does not depend on an unsupported assertion that protected records were actually disclosed. Whether those facts sufficiently allege misuse and cognizable harm must be decided under the tort's elements, not by saying the subpoena was quashed or counsel acted in litigation.

Quashing, prematurity, incidental ill will, and ordinary litigation expense do not by themselves establish abuse of process. Nor does an allegation of improper motive alone defeat the separate attorney–client conspiracy limitation. *General Refractories*, 337 F.3d at 305–11, 313–14. Plaintiff challenges the failure to address the pleaded combination and proposed cure; she does not seek those shortcuts. Because Doc. 133 adopted the Report and Recommendation as modified,

the requested reconsideration concerns the resulting disposition, not an assertion that every issue was wholly unmentioned anywhere in the record.

The party-identification issue also remains. Doc. 133's fifteen-person list omits Jake David Becker, while its discussion names "Jeremy Becker." Doc. 134, p. 3, ¶ 6. The Court should clarify the disposition applicable to the actually named defendant and the legal basis for it. Lamb McErlane PC was proposed for joinder; Plaintiff requests adjudication of that request, not "reinstatement" of a firm already joined. Doc. 135, pp. 19–20. Identifying the correct person and proposed party is necessary to define both the relief denied and the issues preserved for review.

## V. THE EXISTING REQUESTS TO CORRECT AND DEFINE THE AMENDMENT CONDITIONS REMAIN UNANSWERED ON THEIR TERMS.

Doc. 134 challenges the application and justification of the thirty-page restriction and the "directly or indirectly" AI-provenance certification, not the existence of all case-management authority. Doc. 133, ¶¶ 9(c)–(d); Doc. 135, pp. 20–23. The page cap excludes exhibits. Paragraph 9(d) addresses the future Third Amended Complaint and also contains disclosure language concerning AI assistance. Plaintiff disputes how those provisions fit together and requests vacatur or precise tailoring. She does not characterize the Order as an express casewide ban on every motion, brief, or appeal, or assert an established right to unlimited pages or unrestricted AI assistance.

The issue is whether these plaintiff-specific conditions, attached to the challenged claim dispositions and a with-prejudice warning, have a lawful, adequately defined, and proportionate basis. *Dietz v. Bouldin*, 579 U.S. 40, 45–46 (2016), requires inherent case-management measures to remain a reasonable response to the problem and consistent with governing rules and statutes. Rule 11 responsibility remains intact. Doc. 134, p. 4, ¶ 8. Requesting correction of a disputed restriction does not admit its factual predicates or surrender Plaintiff's objection to being required to litigate within the narrower characterization she challenges. Defendants' general invocation of pleading rules does not answer the particular certification language or its reach.

The limited Rule 55(a) clarification also remains as presented. Plaintiff distinguishes the District Judge's recognition that she sought entry of default from the Magistrate Judge's treatment; the requested correction concerns the separate failure-to-plead-or-otherwise-defend question, not a claim that Mariani confused clerk's entry with default judgment. Doc. 134, p. 4, ¶ 9; Doc. 135, pp. 23–24. No new default chronology or motion is introduced here. Defendants' failure to address these retained grounds does not itself establish entitlement to relief, but neither does it decide them.

## CONCLUSION AND REQUESTED DISPOSITION

Plaintiff requests the relief already specified in Doc. 134: reconsider the identified portions of Doc. 133; assess the previously tendered corrections under the proper claim- and defendant-specific standards; permit the requested correction or identify the particular remaining deficiencies; preserve the distinct Jewish-ancestry, discrimination, retaliation, and conspiracy theories for the appropriate adjudication; clarify the Becker and proposed-firm dispositions; and vacate or precisely tailor the challenged amendment conditions and correct the identified characterizations. No claim's legal sufficiency is presumed merely from its label, and no distinct claim is surrendered merely because another statute supplies a different liability rule.

The qualified pleading-preservation position in Doc. 134, p. 5, ¶ 10, remains exactly as stated; this reply neither enlarges that election nor withdraws its express nonconsent and nonabandonment protections. Plaintiff does not claim that filing reconsideration automatically stayed the amendment deadline, created appellate jurisdiction, or assured merger of every interlocutory ruling into a later dismissal. Her separate requests for deadline protection and authorized review remain separate. Doc. 135, pp. 24–25. The Court should resolve the actual preserved claims and objections on their proper terms, without treating a disputed characterization as a concession by the party who has consistently challenged it.

Respectfully submitted,

/s/ Madison Rose Lucey
Madison Rose Lucey, M.S.
Plaintiff Pro Se
244 Sunrise Drive
Milford, PA 18337
Telephone: (570) 686-2347
Email: madisonchaitlucey@proton.me
Dated: October 28, 2026

**CERTIFICATE OF WORD COUNT**

Pursuant to M.D. Pa. Local Rule 7.8(b)(2), I certify that this brief contains 3,504 words under the computerized count used to prepare it. The count includes the caption, tables of contents and authorities, headings, body, signature blocks, and this certificate. The brief is prepared in 14-point Times New Roman type.

/s/ Madison Rose Lucey
Madison Rose Lucey, M.S.
Plaintiff Pro Se
Dated: October 28, 2026